UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MEBA PENSION TRUST – DEFINED BENEFIT PLAN,

MEBA PENSION TRUST – MONEY PURCHASE
BENEFIT PLAN,

MEBA MEDICAL AND BENEFITS PLAN,

MEBA TRAINING PLAN,

MEBA VACATION PLAN – ATLANTIC, GULF,
AND PACIFIC COASTS,

H. MARSHALL AINLEY, as Trustee,

EDWARD HANLEY, as Trustee,

JOINT EMPLOYMENT COMMITTEE

        and

AMERICAN MARITIME CONGRESS,
1007 Eastern Avenue
Baltimore, MD  21202

                Plaintiffs,

                v.

LIBERTY MARITIME CORPORATION,
1979 Marcus Avenue, Suite 200
Lake Success, NY  11042

        SERVE:
        New York Secretary of State
        Statutory Agent
        One Commerce Plaza
        99 Washington Avenue
        Albany, NY  12231

                Defendant.
----------------------------------------------------------------------X

**COMPLAINT**

Case No.

COME NOW, Plaintiffs the MEBA Pension Trust – Defined Benefit Pension Plan (the "Pension Plan"); the MEBA Pension Trust – Money Purchase Benefit Plan (the "MPB Plan"), the MEBA Medical and Benefits Plan (the "Medical Plan"); the MEBA Training Plan (the "Training Plan"); the MEBA Vacation Plan – Atlantic, Gulf, and Pacific Coasts (the "Vacation Plan') (collectively, the "Plans"); H. Marshall Ainley, as Trustee on behalf of the Plans ("Chairman Ainley"); Edward Hanley, as Trustee on behalf of the Plans ("Secretary Hanley"); the Joint Employment Committee ("JEC"); and the American Maritime Congress ("AMC") (collectively, "Plaintiffs").  Plaintiffs state as follows for their Complaint against Defendant Liberty Maritime Corporation:

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction under Sections 502(e) & (f) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(e) & (f); Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a); and 28 U.S.C. §§ 1331 and 1337.

2. Venue lies in this Court under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), which provides that an action may be brought, *inter alia*, where a defendant resides or may be found. Venue is further proper pursuant to 28 U.S.C. §§ 1391(b)(1) & (2).

3. Personal jurisdiction exists over Defendant as Defendant is both headquartered and has its principal place of business in this District.

## Parties

4. The Plans are joint labor-management benefit plans established pursuant to LMRA § 302(c), 29 U.S.C. § 186(c), and multiemployer benefit plans within the meaning of ERISA §§ 3(3) and 3(37), 29 U.S.C. §§ 1002(3) and 1002(37).

5. Chairman Ainley is the Chairman of the Plans' respective Boards of Trustees. He brings this action on behalf of the Plans.

6. Secretary Hanley is the Secretary of the Plans' respective Boards of Trustees. He brings this action on behalf of the Plans.

7. Chairman Ainley and Secretary Hanley are fiduciaries of the Plans within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21). They are authorized to bring an action to recover delinquent contributions pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).

8. JEC is a management labor-association as defined by the Labor Management Cooperation Act, as amended, 29 U.S.C. § 175a, pursuant to LMRA § 302(c)(9), 29 U.S.C. § 186(c)(9).

9. AMC is a research and educational organization dedicated to informing the public, the media, and legislators on the issues and policy affecting the U.S.-Flag merchant marine and maritime industry, to which contributing employers, including Defendant, are required to pay contributions pursuant to their collective bargaining agreements.

10. Defendant is a corporation organized under the laws of, and with its principal place of business in, the State of New York with corporate headquarters at 1979 Marcus Avenue, Suite 200, Lake Success, New York  11042.

11. Service of process may be effectuated on Defendant by serving the New York Secretary of State as statutory agent pursuant to N.Y. Business Corporation Law § 306(b)(1), which is given effect by Fed. R. Civ. P. 4(h)(1)(B).

## Background Facts

12. At all times pertinent to this action, Defendant and the District No. 1, Pacific Coast District, Marine Engineers Beneficial Association, AFL-CIO ("MEBA" or the "Union"),

have been parties to one or more collective bargaining agreements (collectively, the "CBA"), that obligate Defendant to make monthly contributions to Plaintiffs for all employees covered by the CBA.

13. In August 2010, Defendant and the MEBA entered into a memorandum of understanding (the "MOU") which, *inter alia*, extended the term of Defendant's CBA.

14. Specifically, the MOU provided that Defendant's CBA would "continue in full force and effect until midnight, September 30, 2011 and shall continue from year to year thereafter unless either the Company or the Union shall give written notice to the other of its desire to amend the agreement, which shall be given at least sixty (60) but no sooner than ninety (90) days, prior to the expiration date. In the event either the Company or the Union serves notice to amend the Agreement, the terms of the Agreement in effect at that time of the notice to amend shall continue in effect until mutual agreement on the proposed amendments or an impasse has been reached."

15. In other words, in order for Defendant's CBA to terminate, thereby absolving Defendant of its ongoing obligation to pay contributions to Plaintiffs, the following requirements must have been met: (a) between 60-90 days prior to September 30, 2011, or an anniversary thereafter, either Defendant and/or the MEBA was required to give notice of their desire to amend the CBA; and (b) Defendant and the MEBA were required to reach impasse on amendments to the CBA.

16. Thus, even if Defendant and/or the MEBA desired to amend the CBA and gave timely notice to the other of that intention, the CBA would remain in effect past September 30, 2011, unless and until Defendant and the MEBA reached impasse on amending the CBA.

17. In July 2011, both Defendant and the MEBA gave timely notice to the other of their desire to amend the CBA.

18. Effective October 1, 2011, Defendant entered into a CBA with the American Maritime Officers, a different union than the MEBA, which, upon information and belief, did not require Defendant to make contributions to any of the Plaintiffs.

19. Defendant ceased making contributions to Plaintiffs for any work performed within the scope of its CBA with the MEBA beginning October 1, 2011.

20. The MEBA's consistent position was that Defendant remained bound to its CBA with the MEBA because impasse had not been reached and, therefore, the CBA remained in effect past September 30, 2011.

21. Pursuant to the grievance procedures under the CBA, the MEBA filed grievances against Defendant, alleging, *inter alia*, that Defendant had breached the CBA by refusing to comply with the CBA until an agreement was reached on amendments to the CBA or until impasse was reached.

22. Defendant's CBA includes an arbitration provision which provides, *inter alia*, that "[a]ll disputes relating to the interpretation or performance of this Agreement shall be determined in accordance with" the binding arbitration procedures set forth in the CBA.

23. The MEBA sought to follow the CBA's arbitration provisions to resolve its grievances. However, Defendant refused to follow those procedures.

24. As a result, on October 11, 2011, the MEBA filed a lawsuit in the United States District Court for the District of Columbia (the "District Court") due to Defendant's refusal to arbitrate the MEBA's grievances.

25. In that lawsuit, Defendant, *inter alia*, took the position that the questions of whether impasse had been reached and whether the CBA thereby remained in effect were for the District Court to decide, rather than for an arbitrator.

26. On September 30, 2014, the District Court rejected Defendant's arguments and held, *inter alia*, that the questions of whether impasse had been reached and whether the CBA remained in effect were within the scope of the CBA's arbitration provision. Accordingly, the District Court compelled Defendant and the MEBA to arbitrate these issues pursuant to the CBA's arbitration provisions. *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 70 F. Supp. 3d 327 (D.D.C. 2014).

27. On February 26, 2016, the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") affirmed all aspects of the District Court's decision. *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 815 F.3d 834 (D.C. Cir. 2016).

28. Defendant did not seek rehearing of that decision by the D.C. Circuit, nor did Defendant file a petition for a writ of certiorari to the Supreme Court of the United States, and the time for Defendant to take either such action has expired. Accordingly, that decision is now final and binding.

29. As a result, to the extent it would otherwise attempt to do so, Defendant is collaterally estopped from disputing that the question of whether its CBA continued in effect past September 30, 2011, was properly subject to being decided by an arbitrator.

30. After the District Court entered judgment in favor of the MEBA and compelled arbitration, Defendant moved the District Court to stay that order pending its appeal.

31. On November 13, 2014, the District Court denied Defendant's motion to stay the order compelling arbitration.

32. Defendant did not move the D.C. Circuit to stay the District Court's order pending appeal.

33. Accordingly, while Defendant's appeal to the D.C. Circuit was pending, Defendant and the MEBA arbitrated the MEBA's grievances.

34. An arbitration hearing was held on May 15, July 15, and July 16, 2015, in New York City.

35. On December 2, 2015, the Arbitrator issued an award sustaining the MEBA's grievances and finding, *inter alia*, that "[t]he parties were not at impasse as of September 30, 2011 and, therefore, the parties' agreement remains in full force and effect retroactive to September 30, 2011."

36. The arbitration provision of Defendant's CBA provides that "[t]he decision of . . . the Arbitrator . . . shall be final and binding upon the parties and shall be complied with by both parties immediately upon its issuance."

37. Accordingly, the Arbitrator's decision that Defendant's CBA has remained in full force and effect since September 30, 2011, is final and binding.

38. As a result, to the extent it would otherwise attempt to do so, Defendant is collaterally estopped from disputing that its CBA, pursuant to which Defendant was required to pay contributions to Plaintiffs, has remained in full force and effect since September 30, 2011, and continues in effect at the current time.

39. Despite the Arbitrator's decision that Defendant's CBA has remained in full force and effect since September 30, 2011, and continues in effect, and despite the fact that CBA

required Defendant to pay contributions to Plaintiffs, Defendant has not paid any contributions to Plaintiffs for any work performed within the scope of that CBA from October 1, 2011, to the date of filing of this Complaint.

40. Accordingly, Defendant owes contributions to Plaintiffs for all covered work performed under its CBA from September 30, 2011, forward.

41. Upon information and belief, Defendant has vigorously disputed the amounts that the MEBA has claimed to be owed by Defendant as a result of the Arbitrator's decision, including, *inter alia*, the contributions that are owed to Plaintiffs.

42. As a result, although Plaintiffs have no obligation to have made a demand to Defendant prior to initiating this litigation, any such demand would have been futile as evidenced by the positions that Defendant has taken in the arbitration.

43. The exact amount of contributions owed by Defendant to Plaintiffs will be proved by Plaintiffs. However, Plaintiffs have estimated that Defendant owes at least $23,288,344.44 in contributions to Plaintiffs for work performed within the scope of the CBA through July 31, 2017, consisting of the following:

    a.    $5,135,259.06 to the Pension Plan;

    b.    $815,265.81 to the MPB Plan;

    c.    $4,817,774.70 to the Medical Plan;

    d.    $460,078.38 to the Training Plan;

    e.    $11,547,304.11 to the Vacation Plan;

    f.    $460,078.38 to the JEC; and

    g.    $52,584.00 to the AMC.

44. The amount of delinquent contributions owed by Defendant is continuing to grow because, as of the date of filing of this Complaint, Defendant is still not making contributions to Plaintiffs as required by its CBA.

45. Pursuant to ERISA §§ 502(g)(2) & (g)(2)(B), 29 U.S.C. §§ 1132(g)(2) & (g)(2)(B), in seeking to recover delinquent contributions, Plaintiffs are entitled to recover "interest on the unpaid contributions," which "shall be determined by using the rate provided under the plan."

46. Under the Plans' Delinquency Policy, contributions which are not timely paid are assessed interest at the Wall Street Journal prime rate plus 5% per year from the date that contributions were due, compounded monthly.

47. Accordingly, all contributions at issue are subject to an interest rate of, at minimum, 8.25% per year, compounded monthly.

48. The exact amount of interest owed by Defendant will be proved by Plaintiffs. However, based upon unpaid contributions of at least $23,288,344.44, Defendant is estimated to owe at least $6,722,245.47 in interest.

49. The amount of interest owed by Defendant is continuing to grow both because of the ongoing accrual and compounding of interest and because, as of the date of filing of this Complaint, Defendant is still not making contributions to Plaintiffs.

50. Pursuant to ERISA § 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are also entitled to recover "an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . ."

51. In other words, while Plaintiffs are entitled to liquidated damages of up to 20% of the unpaid contributions, if the amount of interest that is owed is greater than the liquidated damages provided under the plan, then Plaintiffs are entitled to a second assessment of interest, or "double interest," in lieu of liquidated damages.

52. The Plans' Delinquency Policy, likewise holds delinquent employers liable for the greater of (i) double interest; or (ii) liquidated damages at the maximum amount permitted under ERISA § 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C), which, as noted above, is 20%.

53. The exact amount of liquidated damages owed by Defendant will be proved by Plaintiffs. However, as of the filing of this Complaint, Plaintiffs estimate that an award of double interest exceeds an award of liquidated damages. Therefore, Plaintiffs are entitled to a second assessment of interest which, as noted above, is currently estimated to be at least $6,722,245.47.

54. The amount of double interest and/or liquidated damages owed by Defendant is continuing to grow both because of the ongoing accrual and compounding of interest and because, as of the date of filing of this Complaint, Defendant is still not making contributions to Plaintiffs.

55. Pursuant to ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), Plaintiffs are also entitled to recover their reasonable attorney's fees and costs of the action.

## Count I
### Delinquent Contributions – ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2)
### (The Plans)

56. Plaintiffs incorporate Paragraphs 1-55 as if fully restated herein.

57. By failing to pay contributions to the Plans for any covered work performed since September 30, 2011, despite the fact that its CBA has remained in full force and effect since that

date, Defendant has violated ERISA § 515, 29 U.S.C. § 1145, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

58. The Plans seek relief as specified in the Prayer for Relief.

## Count II
### Breach of Labor Contract – LMRA § 301, 29 U.S.C. § 185
### (All Plaintiffs)

59. Plaintiffs incorporate Paragraphs 1-58 as if fully restated herein.

60. By failing to pay the contributions owed to Plaintiffs required under its CBA for any covered work performed since September 30, 2011, despite the fact that its CBA has remained in full force and effect since that date, Defendant has breached the CBA.

61. Plaintiffs are intended third-party beneficiaries of the CBA and, therefore, have standing to assert claims for such a breach of the CBA pursuant to LMRA § 301(a), 29 U.S.C. § 185(a).

62. Plaintiffs seek relief as specified in the Prayer for Relief.

### Prayer for Relief

**WHEREFORE,** Plaintiffs pray that the Court grants relief as follows:

1. Entering judgment against Defendant and awarding to Plaintiffs all amounts owed due to Defendant's delinquent contributions, in an amount to be proved by Plaintiffs, but at least $36,732,835.38, including the following:

    a. Unpaid contributions in an amount to be proved by Plaintiffs, but at least $23,288,344.44;

   b. Interest on all unpaid contributions in an amount to be proved by Plaintiffs, but at least $6,722,245.47; and

   c. An amount equal to the greater of: (i) double interest; or (ii) liquidated damages equal to 20% of the unpaid contributions, in an amount to be proved by Plaintiffs, but at least $6,722,245.47;

2. Awarding Plaintiffs their reasonable attorneys' fees and costs incurred in this action, as required by ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2); and

3. Awarding Plaintiffs such other relief as this Court deems just and proper.

Dated: September 20, 2017   */s/ Barry S. Slevin*
              Barry S. Slevin
              Jeffrey S. Swyers (*pro hac vice* to be filed)
              Richard S. Siegel (*pro hac vice* to be filed)
              Slevin & Hart, P.C.
              1625 Massachusetts Ave., N.W., Suite 450
              Washington, DC 20036
              (202) 797-8700
              Fax: (202) 234-8231
              bslevin@slevinhart.com
              jswyers@slevinhart.com
              rsiegel@slevinhart.com
              *Attorneys for Plaintiffs*

A copy of this Complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, as required by ERISA § 502(h), 29 U.S.C. § 1132(h).

20505898v8